BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re: KeyBank Customer Data Security Breach Litigation*<br><br>This Document Relates To:<br><br>All Actions | MDL No. 3056 |

**PLAINTIFFS MARIANN ARCHER AND PATRICK REDDY'S PARTIAL RESPONSE IN OPPOSITION TO PLAINTIFFS KAREN MARTIN AND MICHAEL MARTIN'S MOTION FOR TRANSFER AND CENTRALIZATION IN THE WESTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1407**

## I. INTRODUCTION

Plaintiffs Mariann Archer and Patrick Reddy, the Plaintiffs in *Archer,* et al. *v. Overby-Seawell Co.*, et al., No. 22-cv-03780 (N.D. Ga.) ("Plaintiffs"), pursuant to 28 U.S.C. § 1407 and Panel Rule 6.1(d), through their undersigned counsel, hereby submit this Partial Response in Opposition to the Motion to Transfer. ECF No. 1. While Plaintiffs support consolidation and centralization, Plaintiffs respectfully submit that the MDL should be centralized and consolidated in the Northern District of Georgia, where Overby-Seawell Company ("Overby"), the common Defendant, is headquartered and the majority of the Related Actions are pending.

## II. BACKGROUND

Plaintiffs' action, like all other actions in the Related Actions, stems from a data breach reported by Defendant Overby in or around August 2022, involving the theft of personally identifying information ("PII") from Overby's systems by a still-unknown group of hackers. While

1

additional defendants have been named in related complaints,[1] each action focuses on the breach of Defendant Overby's systems, not KeyBank's systems.

As of this filing, there are ten (10) related actions (the "Related Actions") pending in three (3) districts across the country, and five (5) of the cases are pending in the Northern District of Georgia before Judge Steven D. Grimberg, including Plaintiffs' action. Plaintiffs agree that centralization is appropriate and necessary here, but assert that the Northern District of Georgia—where the majority of the Member Cases are pending and where Overby is headquartered[2]—is the proper situs for all the cases.

## III. LEGAL STANDARD

Actions containing allegations with common questions of fact may be transferred and consolidated under § 1407 if transfer will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel typically considers the following four factors in deciding whether to transfer a case under § 1407:

    a. the elimination of duplication in discovery;

    b. the avoidance of conflicting rules and schedules;

    c. the reduction of litigation cost; and

    d. the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 31.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). Each of these factors favors transfer and consolidation of the cases filed against Overby and any other defendants to the Northern District of Georgia.

---

[1] Other defendants named in the related complaints include Fulton Bank, N.A. and KeyBank, N.A.

[2] This is where relevant witnesses and documentary evidence common to all the actions are likely to be found.

IV. ARGUMENT

    A. The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.

Pretrial transfer and consolidation under § 1407 are appropriate and necessary here. The cases filed against Overby are numerous but involve the same allegations and legal standards. All of the actions allege violations of state and federal statutes, as well as common law principles, against Overby based on its policies, acts, and omissions. All of the actions generally seek certification of a similar class of persons. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

    1. The Litigation Involves Common Question of Fact.

In assessing the appropriateness of consolidation under § 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The Complaints in these cases clearly present common questions of fact. Each Complaint is based on allegations that Overby, through its wrongful actions, inaction, negligent security practices, and resulting data breach, exposed the personal information of hundreds of thousands of people. The Complaints seek certification of similar, nationwide classes.

    2. The Parties Face Duplicative Discovery Absent Transfer and Consolidation.

Because the factual and legal allegations in each of the cases are essentially the same, the parties face duplicative discovery if the cases are not consolidated and transferred. This is an important consideration for the Panel in that transfer and consolidation "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary."

*Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). The parties in these actions will necessarily engage in duplicative discovery. All plaintiffs will seek the same documentation from Overby and will likely request to depose the same witnesses. In response, Overby will raise the same class certification objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. However, if the Panel consolidates and transfers the cases, the parties will be able to coordinate their efforts and thus save all parties—and the courts—time and money.

### 3.  Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Complaints, and the likelihood that future filed actions will contain the same or similar allegations, the possibility of inconsistent rulings on pretrial motions is substantially increased. Overby is likely to present the same pretrial motions in each action and assert the same discovery objections and privileges.

As an example, Plaintiffs anticipate that Overby will file motions to dismiss and/or for summary judgment raising issues of Article III standing. Inconsistent rulings on those dispositive motions would pose a serious problem, in that the purported Class is generally the same in each action. Additionally, because of the similarities in the allegations, Overby will assert the same defenses in opposition to the various plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this risk, it would be in the best interests of all involved—the parties, the witnesses, and the Courts—to transfer and centralize these actions.

### 4. There is Sufficient Numerosity to Support Transfer and Centralization.

As stated earlier, there are ten (10) Related Actions pending against Overby arising out of the data breach. This is a high-profile case that has already received a great deal of pretrial publicity. New plaintiffs continue to file additional cases, and numerous actions will likely be filed against Overby in a multitude of districts, making transfer and consolidation essential. In any event, the Panel has routinely ordered transfer and consolidation of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions). As a result, there is sufficient authority for the transfer and consolidation of the Related Actions against Overby, even without more cases being filed.

### B. Centralization in the Northern District of Georgia Is Appropriate.

There are numerous factors which the Panel typically takes into consideration in determining the most appropriate transferee forum. Among those factors are: (1) convenience of the parties; (2) location of witnesses and other evidence; (3) whether the district is in an accessible metropolitan location; (4) experience in management of class actions and complex litigation; (5) the caseload of the transferee district; and (6) the number of cases pending in the jurisdiction. *See, e.g.*, *In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L.1973);

*In re Preferential Drug Prod. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376, 1378 (J.P.M.L. 2002); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Educ. Testing Serv. Prt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004).

Should the Panel choose to centralize and consolidate the Related Cases before one judge, Plaintiffs respectfully submit that the Northern District of Georgia is the most appropriate venue. In selecting a transferee district, the Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Manual for Complex Litigation (Fourth) § 20.131 (2004). Each of these factors favors the Northern District of Georgia.

Five (5) of the ten (10) Related Actions are (or will soon be) pending in the Northern District of Georgia. This key fact renders the Northern District of Georgia as the most appropriate transferee district. *In re PersonalWeb Techs., LLC*, 340 F. Supp. 3d 1373, 1374–75 (J.P.M.L. 2018) (transferring cases to district where "[t]he majority of the cases are pending"); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010) (same).

Additionally, the vital, indispensable, common-to-all cases Defendant, Overby, is headquartered in the Northern District of Georgia indicating that key documents and witnesses are likely to be found in that District. The existence of key witnesses and documents in a given district is one of the most important factors in deciding where an MDL should be located. *See In re Hill's Pet Nutrition, Inc.*, No. MDL No. 2887, 2019 U.S. Dist. LEXIS 93990, at *2 (J.P.M.L. June 4, 2019) (transferring to district because "Hill's is headquartered in that district, and it represents that its key evidence and witnesses are located there"); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales*

*Pracs. Litig.*, 178 F. Supp. 3d 1377 (J.P.M.L. 2016) ("key witnesses reside there, including employees and decision makers tasked with the development and execution of product labeling, marketing and advertising"); *In re FCA U.S LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d 1354 (J.P.M.L. 2016) ("key witnesses and documents are located there, including evidence from its . . . supplier . . . which has its U.S. regional headquarters in this district."); *In re Nissan N. Am., Inc.*, 542 F. Supp. 2d 1367 (J.P.M.L. 2008) ("Because the Middle District of Tennessee is the location of . . . headquarters, several parties anticipate that relevant discovery will be found there.")

The third factor—whether the transferee district is easily accessible to parties and witnesses—overwhelmingly favors the Northern District of Georgia. The District hosts the world's busiest airport (Hartsfield-Jackson Atlanta International Airport) since 1998.[3] In September of 2022, Hartsfield-Jackson Atlanta International Airport saw over 70,000 flights from 46 different countries and serviced over 696 routes for 59 different airlines.[4] Hartsfield-Jackson serves over 150 U.S. destinations.[5] Importantly, Atlanta is within a two-hour flight of 80 percent of the United States population.[6] This factor thus favors the Northern District of Georgia or is also a wash as between the venues.

In respect to another crucial factor—whether the transferee court has the capacity to devote sufficient resources to complex consolidated proceedings—the Northern District of Georgia is just as well equipped to handle these proceedings as the Western District of Pennsylvania. As of June 30, 2021, the median time to disposition of a case in the Northern District of Georgia was 6.5

---

[3] *See, e.g.*, https://www.cnn.com/travel/article/atlanta-airport-worlds-busiest-why/index.html.

[4] *See* https://atlairport.net/statistics/.

[5] *See* https://www.investclayton.com/atlanta-international-airport.php.

[6] *See id*.

months whereas the median time to disposition of a case in the Western District of Pennsylvania is 6.0 months.[7] This factor is inconsequential as between the two venues.

Based on these metrics, the Northern District of Georgia is plainly the superior venue since the majority of the factors clearly favor that venue over the Western District of Pennsylvania.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the MDL should be centralized and consolidated in the Northern District of Georgia.


Date: November 8, 2022                              Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
Justin C. Walker (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

M. Anderson Berry
Gregory Haroutunian
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 777-7777 / Fax: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

MaryBeth Vassil Gibson
**The Finley Firm, P.C.**
Building 14, Suite 230
3535 Piedmont Road
Atlanta, GA 30305
404-320-9979 ext 202
Fax: 404-320-9978
*mgibson@thefinleyfirm.com*

---

[7] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf.